NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1296

COMMONWEALTH

vs.

WILLIAM WRIGHT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

We need not repeat the lengthy procedural history of this case, most of which is set forth in Commonwealth v. Wright, 101 Mass. App. Ct. 1116 (2022).  As relevant here, a panel of this court vacated most of the defendant's convictions stemming from an armed home invasion based on the Commonwealth's failure to disclose certain evidence (Brady violation[1]).  See id.  However, the panel affirmed the defendant's convictions for unlawfully carrying a firearm and resisting arrest, concluding that the

_____

[1] See Brady v. Maryland, 373 U.S. 83 (1963).

defendant was not prejudiced by the Commonwealth's nondisclosure of evidence with respect to these two charges.[2]  See id.

Following remand, but prior to retrial, the Supreme Judicial Court decided Commonwealth v. Guardado, 491 Mass. 666 (2023) (Guardado), prompting the defendant to file a motion for new trial seeking to vacate his firearm conviction.  He argued that he was entitled to a new trial because the judge did not instruct the jury that the lack of licensure is an essential element of the offense.  He also argued that the impact of the Brady violation must be considered in assessing the prejudicial impact of the Guardado error.  In a thoughtful memorandum of decision, the motion judge, who was also the trial judge, denied the motion, and the subsequently filed motion for reconsideration.  The defendant timely appealed.  We affirm.

Discussion.  It is undisputed that the judge did not instruct the jury that the Commonwealth must prove beyond a reasonable doubt that the defendant did not have a license to carry a firearm.  See Guardado, 491 Mass. at 667.  This was error.  Reviewing the entire trial record, we must then determine whether the error was harmless beyond a reasonable doubt.  See Commonwealth v. Tavares, 482 Mass. 694, 709 (2019).

---

[2] The defendant did not seek further appellate review.  A single justice of this court denied the Commonwealth's motion to stay this appeal until the defendant's retrial occurred.

In Commonwealth v. Bookman, 492 Mass. 396, 401 (2023), the Supreme Judicial Court held that where a police officer testified that the defendant did not have a license to carry a firearm, and where the officer's credibility was not in question, the failure of the judge to instruct the jury on licensure was harmless beyond a reasonable doubt.

This case is similar to Bookman, as the Commonwealth presented evidence that the defendant did not have a license to carry a firearm. The evidence on this point was brief, and uncontested. Chicopee police Detective Michael Dion was asked "[W]as there a records check of whether or not [the defendant] had any sort of license to carry or a license for firearms?" Dion answered that "[t]here was no license issued to [the defendant] from the Commonwealth of Massachusetts for a license to carry, LTC." There was no objection to this testimony, and Dion was not cross-examined on this point.

The defendant claims that this case is distinguishable from Bookman. First, he argues that Dion's testimony was hearsay and therefore it was insufficient to render the error harmless. Because the defendant did not object to this testimony, the jury was permitted to consider it for its truth. See Commonwealth v. Silva, 431 Mass. 401, 404 (2000), quoting Commonwealth v. Keevan, 400 Mass. 557, 562 (1987) ("Hearsay which is not objected to at trial may be 'weighed . . . with the other

3

evidence, and given any evidentiary value which it may possess'").  See also Mass. G. Evid. § 802 (2024).  Thus, there was sufficient evidence of the defendant's lack of licensure. Moreover, nothing in Bookman turned on whether the evidence of licensure was hearsay.  See Bookman, 492 Mass. at 400-401.

The defendant claims that we should not consider his failure to dispute Dion's testimony, contending that it is not relevant to the analysis because, at the time of trial, evidence of a lack of licensure was "irrelevant."  Again this reasoning is contrary to Bookman where, in determining the instructional error was harmless beyond a reasonable doubt, the court noted that the evidence of nonlicensure was undisputed at trial.  Id. at 401.  Finally, to the extent that the defendant argues that Bookman was wrongly decided, we have "no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided."  Commonwealth v. Vasquez, 456 Mass. 350, 357 (2010), citing Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003).

Lastly the defendant contends that the "combined impact of the Guardado error and the Brady violation was not harmless beyond a reasonable doubt" and therefore he is entitled to a new trial.[3]  He argues that he could have used the undisclosed

---

[3] The Commonwealth responds that the defendant is directly estopped from making this argument because this issue has

photographic evidence to impeach Dion's testimony, and therefore the evidence of the defendant's lack of licensure would have been put in doubt. He points to two possible modes of impeachment. First, he now highlights inconsistencies between Dion's testimony at a prior motion hearing concerning the booking process and his testimony at trial, but these perceived inconsistencies were not related to the photographs involved in the Brady violation, and the defendant could have pointed out the inconsistencies at trial. Second, as to the undisclosed crime scene photos, the defendant points only to Dion's testimony that he took boots off of the defendant and tagged them during the booking process, whereas photos show the boots were lying in the snow at the time of the arrest. Based on the photographs, the defendant contends that he would have been able to "raise a reasonable doubt about the accuracy" of Dion's testimony. Put differently, he claims that if Dion was mistaken in any way about the boots, then he could have also been mistaken about the licensure.[4] We are not persuaded. Dion, who

_____

already been decided in a final judgment between the same parties. We pass on the question of direct estoppel, concluding that the instructional error was harmless beyond a reasonable doubt.

[4] We note that the defendant would be unable to dispute the lack of licensure at trial because he was a prohibited person who is not permitted a license to carry a firearm pursuant to G. L. c. 140, § 131 (d) (i).

5

was present at the arrest scene when the defendant was placed on a stretcher, testified, "I think he had boots on, because there was snow, yeah, boots."  At most, the photographs show that at some point at the arrest scene, the defendant did not have his boots on -- a point not necessarily inconsistent with any of Dion's testimony about seeing boots worn by the defendant or tagging boots later at the station as evidence.  To the extent there may be an arguable inconsistency between Dion's testimony and the photographs, such evidence tended generally to impeach Dion's testimony, but it does not suggest that Dion's overall testimony "was in question."  Bookman, 492 Mass. at 401. Although there may be some circumstances where a discovery

violation may have an impact on a trial error, that is not the case here.

Order denying motion for new trial affirmed.

Order denying motion for reconsideration affirmed.

By the Court (Blake, Walsh & Hodgens, JJ.[5]),

*Paul Little*

Clerk

Entered:  October 16, 2024.

---

[5] The panelists are listed in order of seniority.